# EXHIBIT 1

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

| | |
|---|---|
| Jefferies Leveraged Credit Products, LLC, | Index No. |
| Plaintiff, | |
| -against- | **SUMMONS** |
| Invictus Global Management, LLC, | |
| Defendant. | |

TO THE ABOVE NAMED DEFENDANT:

You are hereby summoned to answer the complaint in this action and serve your answer on the Plaintiff's attorneys indicated below within twenty (20) days after the service of this summons, exclusive of the day of service, or within thirty (30) days after service is complete if this summons is not personally delivered to you within the State of New York. In the case of your failure to answer or appear, judgment will be taken against you by default for the relief demanded in the complaint.

Plaintiff designates New York County as the place of trial. Venue is proper in this court under N.Y. C.P.L.R. § 503(a) because Plaintiff resides in New York County.

Dated: New York, New York
       December 7, 2022

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ David Litterine-Kaufman*
David Litterine-Kaufman
dlitterinekaufman@orrick.com
Harry F. Murphy
hmurphy@orrick.com
51 West 52nd Street
New York, NY 10019-6142
+1 212 506 5000

*Attorneys for Defendant*
   *Jefferies Leveraged Credit Products, LLC*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

----

| | |
|---|---|
| Jefferies Leveraged Credit Products, LLC, | Index No. |
| Plaintiff, | |
| -against- | **COMPLAINT** |
| Invictus Global Management, LLC, | |
| Defendant. | |

----

Jefferies Leveraged Credit Products, LLC ("Jefferies" or "Plaintiff"), for its Complaint against Invictus Global Management, LLC ("Invictus" or "Defendant"), alleges as follows:

**NATURE OF THE ACTION**

1. This case involves Invictus's bad faith attempt to renege on a binding contractual commitment to purchase certain bankruptcy claims from Jefferies because the value of those claims decreased since Invictus agreed to purchase them. The market for bankruptcy claims relies on market participants, like Invictus, being true to their word and closing the trades they enter. Invictus, operated by its co-founders and co-managing partners Amit Patel ("Patel") and Cindy Chen Delano ("Delano"), is a sophisticated institutional investor with significant experience purchasing bankruptcy claims, and its efforts to avoid fulfilling its contractual obligation are both a serious breach of market protocol and entitle Jefferies to damages in this action.

2. On July 21, 2021, Jefferies agreed to sell, and Invictus agreed to purchase, $5 million face amount of bankruptcy creditor claims (the "Claims") asserted in the bankruptcy of LATAM Airlines Group S.A. ("LATAM") at a sale price of 68 cents on the dollar (the "Transaction"). The terms of this agreement, including the face amount and sale price were memorialized in Bloomberg Terminal messages, dated July 21, 2021, between Patel and a

Jefferies' claims representative, who was acting on behalf of a Jefferies' trader. The trade was subsequently confirmed by a Jefferies' salesperson.

3. On July 23, 2021, Patel requested that Jefferies send a trade recap for Transaction. On the next business day, July 26, 2021, the Jefferies' salesperson sent Patel a trade recap of the Transaction, again including the face value of the Claims and the price that Invictus purchased them for. Patel acknowledged the recap of the Transaction in writing on the same day. Settlement of the Transaction was subject only to the execution of industry-standard transfer documentation and required Know Your Customer completion. Due to this, it is common when purchasing and selling bankruptcy claims for settlement to take several months. All market participants understand that the trade becomes contractually binding on the date that the parties agreed to the material terms (i.e., price and quantity) and that parties cannot renegotiate the terms of the trade or cancel the trade between the trade date and the settlement date.

4. Patel and Delano are extremely sophisticated secondary market participants with a decade of experience in the industry. They have worked with Jefferies for several years and have settled numerous bankruptcy claims transactions with Jefferies, making them well-aware of how long these types of transactions take to commence, negotiate and settle. More specifically, Jefferies has settled 12 bankruptcy claims transactions with Patel and Delano at Invictus or their prior firm, involving an aggregate face amount of more than $40 million. Depending on the complexity of the issues to resolve before settling, some transactions settled within weeks of the trade. Others took several months—some more than six months. But in each case, Patel and Delano worked expeditiously, and seemingly in good faith, to move the transactions along and settle them.

5. Invictus's conduct in connection with this Transaction was completely different and seems to be attributable solely to the fact that, since the parties contractually agreed on the Transaction, the market price for LATAM bankruptcy claims decreased significantly. In this case, to date, Invictus has refused to settle the Transaction with Jefferies or even negotiate towards its settlement, even though Jefferies first sent draft transfer documentation to Invictus in November 2021—more than a year before this lawsuit was filed. Invictus has even denied that Jefferies and Invictus entered into the Transaction at all.

6. Jefferies brings this action to recover damages of no less than $3 million plus the attorney's fees and expenses that Jefferies has incurred as a result of Invictus's bad faith refusal to negotiate the necessary transfer documentation and settle the Transaction.

## PARTIES

7. Jefferies is a Delaware limited liability company, whose principal place of business is located at 520 Madison Avenue, New York, New York 10022.

8. Upon information and belief, Invictus is a Delaware limited liability company, whose principal place of business is 310 Comal Street, Building A, Suite 229, Austin, Texas 78702.

## JURISDICTION AND VENUE

9. This Court has personal jurisdiction over Invictus because Invictus transacted business within the State of New York, including by negotiating and entering into the Transaction that is the subject of this Complaint.

10. Venue is proper in this Court under N.Y. C.P.L.R. § 503(a) because Plaintiff resides in New York County.

## FACTS

**I.     Jefferies and Invictus Are Active Participants in the Market for Bankruptcy Claims**

11.     Creditors who have submitted proofs of claim in a Chapter 11 bankruptcy proceeding have the ability to sell those claims to other market participants. Such sales allow the original creditor to obtain cash before the bankruptcy proceedings are resolved and avoid the uncertainty that accompanies holding and pursuing a claim in bankruptcy. The purchaser of a bankruptcy claim has the opportunity to earn a profit either by selling the claim at a higher price to a third party or awaiting the resolution of the bankruptcy process and recovering more on the claim than the purchaser paid to the original creditor.

12.     Jefferies is a privately held Delaware limited liability company and is a wholly owned subsidiary of Jefferies Financial Group Inc. Jefferies provides integrated sales, trading, research, and capital markets capabilities. Among other products, Jefferies purchases and sells bankruptcy claims.

13.     Upon information and belief, Invictus is Delaware limited liability company that operates as a fund focusing on distressed debt, bankruptcy claims, and litigation-oriented investment opportunities.

14.     Invictus and Jefferies are both active participants in the market for the purchase and sale of bankruptcy claims and have engaged in several other transactions with each other involving bankruptcy claims.

15.     In 2021-2022, Jefferies settled three bankruptcy claims transactions with Invictus, involving an aggregate face amount of more than $14 million. Two of those three transactions took more than six months to settle. The other took approximately six weeks to settle. When Patel and Delano worked at another firm, Jefferies settled nine bankruptcy claims transactions with that other firm, involving an aggregate face amount of more than $26 million. Three of

those transactions settled within two months, and six of those transactions took more than two months to settle.

## II. Invictus Makes a Contractually Binding Commitment to Purchase the Claims From Jefferies

16. This case relates to the purchase and sale of certain bankruptcy claims asserted against LATAM, a company that filed to reorganize under Chapter 11 of the United States Bankruptcy Code on or about May 26, 2021. LATAM exited Chapter 11 on or about November 3, 2022.

17. As is common in the market for purchasing and selling bankruptcy claims, negotiations between Jefferies and Invictus regarding the LATAM bankruptcy claims were conducted largely through the instant messaging feature on Bloomberg Terminal ("IB messages"). The negotiations were conducted primarily between Patel and a Jefferies' trader based in New York City.

18. At all times, Invictus knew that it was negotiating with a New York-based Jefferies' trader, that Jefferies is headquartered in New York City, and that the trade at issue would entail the purchase of LATAM bankruptcy claims from Jefferies in New York. Patel is also aware that Jefferies is headquartered in New York City because he previously worked as an investment banking analyst at a Jefferies' affiliate.

19. On July 20, 2021, the Jefferies' claims representative and Patel discussed Invictus potentially purchasing LATAM bankruptcy claims from Jefferies. On July 21, 2021, those discussions culminated in a contractual agreement by Invictus to purchase from Jefferies LATAM bankruptcy claims with a face amount of $5 million at a price of 68 cents on the dollar. The terms of the contractual agreement were memorialized in IB messages.

20. At the time of the parties' agreement to transact a face amount of $5 million, Jefferies had $4 million of LATAM bankruptcy claims in inventory. The Jefferies' salesperson disclosed this fact to Patel, who therefore understood that Jefferies would have to "source" the remaining $1 million (*i.e.*, Jefferies would need acquire the remaining $1 million of LATAM claims on the secondary market).

21. As here, it is common for market participants in the bankruptcy claims market to agree to sell a larger face amount of bankruptcy claims than the party currently has in inventory and to source additional amounts for a customer. It is also common for such sourcing, and the transfer documentation necessary to settle the transaction, to take several months to complete. In July 2021, market participants understood that liquidity for LATAM claims was low and that it would take time for Jefferies to source the additional claims.

22. On July 23, 2021, Patel sent two emails to Jefferies acknowledging the Transaction and asking for Jefferies to send a trade recap for the Transaction. One of those emails specifically included the face amount of $5 million and the price of 68 cents on the dollar.

23. The Jefferies' salesperson emailed Patel on July 26, 2021, to confirm the trade, writing that Jefferies "sells 5mm [i.e., $5 million face amount] LATAM holdco claim[s] at 68 to Invictus." The email also stated that the parties would work together on "diligence, mutually agreeable docs, and successful completion of KYC [*i.e.*, 'Know Your Customer' requirements]." The Jefferies' salesperson concluded the email by stating "[t]hanks for the trade."

24. Patel acknowledged the receipt of this trade recap by responding to it less than 10 minutes later. To date, Patel has never claimed that he did not contractually agree to the terms of the Transaction set forth in Jefferies' recap email.

25. Based on this contractual agreement, Jefferies began to line up all of the diligence information to settle the trade and reach out to other market participants to source the additional $1 million of LATAM claims that it needed to settle the Transaction.

### III. Invictus Recognizes the Trade Before Reversing Its Position and Refusing to Negotiate in Good Faith to Settle the Transaction

26. Jefferies subsequently engaged outside counsel to facilitate the completion of the transfer documentation for the Transaction. In other transactions with Jefferies, Invictus would immediately retain outside counsel to facilitate settlement of the transaction, and Invictus's outside counsel would then promptly contact and work directly with Jefferies' outside counsel to start the settlement process. Contrary to Invictus's typical practice, its outside counsel never initiated contact with Jefferies or Jefferies' outside counsel in connection with the Transaction.

27. On November 8, 2021, Jefferies' outside counsel contacted Delano to ask which outside counsel was representing Invictus in connection with the Transaction.

28. Delano then claimed not to recall the trade and asked Jefferies' outside counsel to send her the trade recap. After Jefferies' outside counsel forwarded the trade recap and Patel's acknowledgement thereof to Delano on November 8, 2021, Delano asked whether Jefferies would be sending information regarding the transfer documentation. Notably, Delano and Invictus did not dispute the trade and discussed steps to settle the Transaction.

29. Between November 8, 2021 and December 6, 2021, Jefferies' outside counsel provided information regarding the transfer documentation to Delano of Invictus. On December 6, 2021, Jefferies' outside counsel inquired whether Delano had any questions on the LATAM Transaction information that Jefferies had previously sent. In response to that email, Delano again did not dispute the trade but asked that Jefferies send all transfer documentation for

the Transaction after Jefferies finished souring the additional LATAM bankruptcy claims that it had agreed to sell to Invictus.

30. Consistent with Invictus's request to source the extra $1 million in claims and send all of the transfer documentation at one time, between December 6, 2021 and June 8, 2022, Jefferies sourced sufficient additional LATAM bankruptcy from other market participants claims to complete the Transaction and drafted the transfer documentation necessary to settle the Transaction. During this time, there were no distributions made on the Claims (i.e., Jefferies did not receive any cash and continued to hold the Claims on its books), and Jefferies continues to hold the additional $1 million in LATAM bankruptcy claims on its books, along with the $4 million it held in inventory as of July 21, 2021, through the present. Jefferies has not received any benefit from holding the Claims until the present and will not receive anything until LATAM's claims process is complete.

31. On June 8, 2022, Jefferies' outside counsel sent all of the transfer documentation for the Transaction to Patel, Delano, and Invictus's outside counsel. Notwithstanding the communications with Patel where the parties contractually agreed on the trade, the trade recap that Patel acknowledged, and the email exchanges with Delano who acknowledged the trade, incredibly Invictus's outside counsel replied later that same day that "Invictus does not recognize this trade."

32. Between June 8, 2022 and November 18, 2022, Jefferies attempted to reach out to Invictus to settle the Transaction, including discussing it with Patel who entered into the trade and confirmed it. Patel stated during those conversations that he would look into the matter, but never took any action to settle the Transaction.

33. On November 18, 2022, the Jefferies' salesperson sent the trade recap to Patel again and asked whether Invictus would move forward with closing the Transaction. Patel never responded.

34. Invictus's bad faith in connection with the Transaction is particularly evident when compared to that of other market participants—and even Invictus's conduct in other transactions. Jefferies sold LATAM bankruptcy claims to several other market participants in 2021, and all of those transactions settled without incident. Invictus itself, working with a co-investor who bore the economic risk in the transaction, purchased LATAM bankruptcy claims from Jefferies in June 2021 and settled the transaction in August 2021. But in this Transaction, where Invictus bore the economic risk, and it was clear shortly after Invictus agreed to the trade that Invictus would lose money, Invictus refused to settle.

35. Invictus's norm-breaking conduct in connection with LATAM bankruptcy claims also is not unique to this case. In another case currently pending in New York Supreme Court, which involves a LATAM bankruptcy claim transaction that Invictus apparently did settle, Invictus is suing the seller of the bankruptcy claim to get its money back. Defendants in that suit have said that Invictus's lawsuit was undertaken as "a brazen ploy . . . to renege on a bad bargain that it struck" because Invictus was "plagued with buyer's remorse" after the price of LATAM bankruptcy claims fell significantly.[1] Similarly plagued with buyer's remorse in connection with this Transaction, Invictus has forced Jefferies to bring this lawsuit.

---

[1] Defendants' Memorandum of Law re Summary Judgment, *Invictus Global Management, LLC v. GE Engine Services, LLC*, Index No. 652103/22 (N.Y. Sup. Ct.), Dkt. No. 49 at 1.

IV.     **Jefferies Suffers Harm as a Result of Invictus's Bad Faith Refusal to Settle the Transactions**

36.     As a result of Invictus's failure to settle the legally binding Transaction, Jefferies has suffered, and will continue to suffer, damages representing, at a minimum, the difference between the price at which Jefferies agreed to sell, and Invictus agreed to purchase, the Claims and the market price for LATAM bankruptcy claims, as well as all expenses incurred by Jefferies in attempting to settle the Transaction, including attorney's fees and those incurred in bringing this action.

## COUNT I
## BREACH OF CONTRACT

37.     Jefferies realleges each of the allegations in paragraphs 1 through 36 above as though fully set forth herein.

38.     Jefferies and Invictus entered into a valid, binding agreement for the purchase and sale of the Claims, which obligated Invictus to negotiate settlement in good faith and to settle the Transaction.

39.     Jefferies has fully complied with its obligations under the agreement, including by sourcing and purchasing additional LATAM bankruptcy claims to fulfill Invictus's request for a larger size trade than the inventory that Jefferies specifically disclosed that it had and expending substantial time, effort, and expense to prepare the transfer documentation required to settle the Transaction.

40.     Invictus has breached their contractual obligations to buy the Claims, including by failing to negotiate transfer documentation in good faith and to settle the Transaction.

41.     As a direct and proximate cause of Invictus's breaches, Jefferies has suffered and will continue to suffer damages.

## COUNT II
## PROMISSORY ESTOPPEL

42. Jefferies realleges each of the allegations in paragraphs 1 through 36 above as though fully set forth herein.

43. Invictus made a clear and unambiguous promise to negotiate transfer documentation in good faith and to settle the Transaction.

44. Invictus breached this promise by failing to engage in good faith negotiations regarding the transfer documentation and to settle the Transaction.

45. Jefferies reasonably relied on Invictus's promise to negotiate transfer documentation in good faith and to settle the Transaction by purchasing additional LATAM bankruptcy claims to fulfill Invictus's request and making diligent efforts to prepare the transfer documentation required to effectuate the Transaction, including by incurring substantial expense engaging outside counsel.

46. As a result of Invictus's breaches, Jefferies has suffered and will continue to suffer damages.

## PRAYER FOR RELIEF

WHEREFORE, Jefferies demands:

(a) Judgment in favor of Jefferies and against Defendant on Count I or, in the alternative, on Count II;

(b) Damages from Defendant in an amount to be proved at trial, but not less than $3 million, and pre-award and post-award interest thereon;

(c) Jefferies' attorneys' fees and costs incurred in bringing this action; and

(d) Such other and further relief at law or equity that the Court deems just and proper.

Dated: New York, New York
December 7, 2022

    Respectfully submitted,

    ORRICK, HERRINGTON & SUTCLIFFE LLP

    By:     */s/ David Litterine-Kaufman*

        David Litterine-Kaufman
        dlitterinekaufman@orrick.com
        Harry F. Murphy
        hmurphy@orrick.com

51 West 52nd Street
New York, NY 10019-6142
+1 212 506 5000

*Attorneys for Plaintiff
Jefferies Leveraged Credit Products, LLC*