**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JEFFERIES LEVERAGED CREDIT
PRODUCTS, LLC,

       Plaintiff,

 v.

INVICTUS GLOBAL MANAGEMENT,
LLC,

       Defendant.

Case No. 23-cv-00114-JHR

### REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT INVICTUS GLOBAL MANAGEMENT, LLC'S MOTION TO DISMISS COMPLAINT

Homer Bonner

Adam Schwartz
1200 Four Seasons Tower
1441 Brickell Avenue
Miami Florida 33131
Phone: (305) 350-5116

**OTTERBOURG P.C.**
Erik Weinick
230 Park Avenue
New York, NY 10169
Phone: (212) 661-9100

## **TABLE OF CONTENTS**

<u>Page</u>

TABLE OF AUTHORITIES ........................................................................................................ iii

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ............................................................................................................................... 2

    POINT I: THERE WAS NO CONTRACT BETWEEN PLAINTIFF AND INVICTUS ... 2

        A.  The Breach of Contract Claim Fails Because the Parties Never Came to an Agreement on the Specific $5 Million Bankruptcy Claim to Be Sold. ......... 2

        B.  The Breach of Contract Claim Fails as a Matter of Law Because It Was Expressly Subject to Conditions Precedent, Including Diligence, KYC, and Documentation, Which Were Never Fulfilled. ............................... 4

        C.  The Breach of Contract Claim Fails Because Plaintiff Cannot Allege It Tendered a $5 Million LATAM Bankruptcy Claim to Invictus. .................... 7

        D.  Plaintiff's Argument That It "Was and Remains Willing to Perform" Does Not Save the Complaint from Dismissal ........................................................ 8

    POINT II: PLAINTIFF'S PROMISSORY ESTOPPEL CLAIM FAILS .......................... 8

    POINT III: PLAINTIFF IS NOT ENTITLED TO ATTORNEYS' FEES ....................... 10

CONCLUSION .......................................................................................................................... 10

# TABLE OF AUTHORITIES

Page

**Cases**

Brown v. Cara,
   420 F.3d 148 (2d Cir. 2005) ................................................................. 5

DCR Mtge. VI Sub I, LLC v. Peoples United Fin., Inc.,
   148 A.D.3d 986 (2d Dep't 2017) ...................................................... 5, 6

Doe v. New York University,
   No. 1:20-CV-01343-GHW, 2021 WL 1226384 (S.D.N.Y. Mar. 31, 2021) ........................... 10

E. Consol. Props., Inc. v. Morrie Golick Living Trust,
   83 A.D.3d 534 (1st Dep't 2011) ............................................................ 5

Halliwell v. Gordon,
   61 A.D.3d 932 (2d Dep't 2009) ........................................................... 10

ID Beauty S.A.S. v. Coty Inc., HQs.,
   164 A.D.3d 1186 (1st Dep't 2018) ......................................................... 9

Kaczmarcysk v. Dutton,
   414 F. App'x 354 (2d Cir. 2011) .......................................................... 6

Luxor Cap. Grp., LP v. Seaport Grp. LLC,
   148 A.D.3d 590, 50 N.Y.S.3d 70 (2017) ................................................... 5

Pearce v. Manhattan Ensemble Theater, Inc.,
   528 F.Supp.2d 175 (S.D.N.Y. 2007) ....................................................... 9

Stonehill Cap. Mgmt. LLC v. Bank of the W.,
   28 N.Y.3d 439 (2016) ................................................................. 4, 5

Teachers Ins. & Annuity Ass'n of Am. V. Tribune Co.,
   670 F.Supp. 491 (S.D.N.Y. 1987) ......................................................... 8

Webb v. Greater New York Automobile Dealers Assoc., Inc.,
   144 A.D.3d 1136 (2d Dep't 2016) ........................................................ 10

Winston v. Mediafare Ent. Corp.,
   777 F.2d 78 (2d Cir. 1986) .............................................................. 6, 7

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ........................................................................ 1

Federal Rule of Civil Procedure 12(f) ........................................................................... 1

Invictus, through counsel, respectfully hereby replies in further support of its motion to: (i) dismiss the Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6); and (ii) the extent not dismissed in its entirety, to strike the Complaint's prayer for an award of attorneys' fees pursuant to Federal Rule of Civil Procedure 12(f), Dkt. No. 11 (the "**Motion**").[1]

## PRELIMINARY STATEMENT

On July 21, 2021, the parties exchanged the following messages:

Plaintiff:   "Joe wanted me to ping you on Latam holdco he is working on a few million today thinks high 60s context, let me know if you have any interest[.]" Patel Dec., Ex. 1, Dkt. No. 10-1 at 1.

Plaintiff:   "Sorry – the latam I didn't hear back for a while but now came back you can by *the* 5mm at 68[.]" Id. at 4 (emphasis supplied).

Invictus:   "Okay cool[.]" Id.

Plaintiff:   "Yeah will make *subject to diligence and docs and KYC*[.]" Id. (emphasis supplied)

Plaintiff:   "hey – *subject to diligence, mutually agreeable docs, and successful completion of KYC* we can sell you 5mm LATAM holdco at 68[.]" Id. at 7 (emphasis supplied).

Invictus:   "cool[.]" Id.

This is the alleged agreement that Plaintiff drafted.  It is one sentence long.  It is subject to three conditions.  The Complaint fails to allege that any of the three were commenced or completed. Therefore, there was no agreement, no breach, and no basis for this case to proceed further.

Faced with this stark reality, Plaintiff now argues that these critical conditions precedent— diligence, mutually agreeable docs, and KYC—are irrelevant to the analysis of whether there was a binding contract.  Given that reality, it is no wonder that the cases Plaintiff relies on in its Memorandum of Law in Opposition to Invictus' Motion to Dismiss, Dkt. No. 14 (the

---

[1] All capitalized terms not defined herein shall have the meanings ascribed in the Motion.

"**Opposition**"), not only fail to support its position, but undermine it.[2]  More importantly, Plaintiff's references to "transfer documentation" throughout the Complaint are contradicted by Paragraph 40 thereof, which acknowledges that such admittedly critical documentation, which would identify, among other things, the actual claim to be transferred, was never negotiated.

For these reasons, those more fully set forth herein, and those already set forth in the Motion, the Complaint should be dismissed with prejudice.

## ARGUMENT

## POINT I:

## THERE WAS NO CONTRACT BETWEEN PLAINTIFF AND INVICTUS

As established by the Motion, there was no enforceable contract between the parties, and even if there were, Plaintiff's failures to satisfy the conditions precedent excuse any alleged non-performance by Invictus.

**A. The Breach of Contract Claim Fails Because the Parties Never Came to an Agreement on the Specific $5 Million Bankruptcy Claim to Be Sold.**

The original messages from Plaintiff to Invictus said "the" and "claim," meaning a single claim was to be sold, but Plaintiff now says that was a mere typo and that the sale was of multiple "claims."  The actual claim to be purchased is undeniably a critical issue, and one that would have been clarified by the diligence process that is not alleged in the Complaint to have occurred.  The Plaintiff now tried to diminish the significance of the holder of the claim being sold by asserting that claims are fungible.  (Opposition at 2, 6, 9.)  However, as explained in Invictus's Motion, the quality of the finances of the creditor are material to the purchase of any bankruptcy claim, as the buyer of a claim may need to assert causes of action against the seller for a variety of reasons.

---

[2] The absence of a response to each and every argument raised in the Opposition does not constitute an admission as to the validity of such argument.

(Motion at 8, 13.)  But even more to the point—if as Plaintiff now claims that "bankruptcy claim trades typically do not require diligence into the creditor," (Opposition at 6) why did Plaintiff explicitly state that the proposed trade was subject to diligence in the initial July 21, 2021 Bloomberg Terminal Chat and restate in its Proposed Trade Recap that the proposed sale was "***subject to diligence***, mutually agreeable docs, and successful completion of KYC"?  Patel Dec., Ex. 3, Dkt. No. 10-3 (emphasis supplied).  The actual words of the Bloomberg Terminal Chat and Plaintiff's Proposed Trade Confirm control, not Plaintiff's new-found attempt to circumvent their plain language.

Plaintiff continues to obfuscate in the Opposition, just as it did in the Complaint, by misquoting and misstating document contents.  For example, and most glaringly, the "trade recap" that Plaintiff itself furnished to Invictus on July 26, 2021 states that Plaintiff "sells 5mm LATAM holdco **claim** at 68 to Invictus" (emphasis supplied), but the Complaint liberally edits the quoted language to change the singular term "claim" to the plural term "claims."  See, e.g., Compl. ¶ 23. Plaintiff's blatant misrepresentations indicate that it is aware of the lack of agreement between the parties, and is attempting to shift its own losses from LATAM claims onto Invictus.

Whether the missing "s" was intentional or not, the term's materiality is demonstrated by Plaintiff's own description of the breach at Paragraph 40 of the Complaint: "Invictus has breached their contractual obligations to buy the Claims, including by ***failing to negotiate*** transfer documentation in good faith and to settle the Transaction."  Complaint ¶ 40 (emphasis supplied). Thus, the information in the transfer documentation, namely which claim or claims were to be transferred was, by Plaintiff's own admission, a material open term to be negotiated.  Without agreement on such term, there was no contract, and hence, no breach.

**B. The Breach of Contract Claim Fails as a Matter of Law Because It Was Expressly Subject to Conditions Precedent, Including Diligence, KYC, and Documentation, Which Were Never Fulfilled.**

The Complaint does not allege that diligence, KYC, and documentation requirements were met. These are more than just formalities, as Plaintiff now suggests in the Opposition—they are essential preconditions. Indeed, Plaintiff continues to ignore the fact that it included these prerequisite conditions in the initial June 21, 2021 Bloomberg Terminal discussion, see Patel Dec., Ex. 1, and again in the Proposed Trade Recap on July 26, 2021, see Patel Dec., Ex. 3. As previously emphasized, diligence, KYC, and documentation were critical safeguards for Invictus—not formalities.

The Complaint only mentions "KYC" once, in paragraph 23, where it quotes the July 26, 2021 email from Plaintiff as requiring the parties to "work together on . . . 'successful completion of KYC.'" Notably absent is any allegation that Plaintiff began or completed KYC activities. This alone justifies its dismissal.

Similarly, the word "diligence" only appears twice in the Complaint—once as just quoted at Paragraph 23, and again at Paragraph 25. In the latter instance, the Complaint alleges that "[Defendant] began to *line up* all of the diligence information . . ." (emphasis supplied). Here too, there is no allegation that the diligence that was "line[d] up" was actually provided to Invictus or that it was sufficient. Rather, the allegations can only mean that Plaintiff at best began some work internally, but never engaged with Invictus on that effort.

Unable to allege that it fulfilled the conditions precedent to the alleged contract, Plaintiff tries to downplay the significance of these conditions by citing Stonehill Cap. Mgmt. LLC v. Bank of the W., 28 N.Y.3d 439, 451 (2016) for the proposition that the phrase "subject to" without more "is not the same as a clear expression that the parties were not bound to consummate the sale. . . ."

However, the court did not go as far as Plaintiff suggests, but rather, unremarkably held that ambiguous, formulaic, and uncertain "subject to" language in an auction bid form is insufficient to prove that parties intended not to be bound.  In contrast, the alleged contract here is incredibly brief, making the "subject to" terms (diligence, documentation, and KYC) take on additional critical relevance, which relevance Plaintiff demonstrated it understood by volunteering the conditions.

Moreover, Plaintiff fails to recognize that the case at bar is on all fours with <u>Luxor Cap. Grp., LP v. Seaport Grp. LLC</u>, 148 A.D.3d 590, 50 N.Y.S.3d 70 (2017) which distinguishes <u>Stonehill</u>.  In <u>Luxor</u>, the court affirmed the dismissal of a complaint alleging the formation of a contract via instant messages, because, as here, the transaction at issue was subject to language to be agreed upon and mutually satisfactory documentation.  148 A.D.3d at 590–91.

Likewise, Plaintiff misleadingly cites to <u>Brown v. Cara</u>, 420 F.3d 148, 157 (2d Cir. 2005), claiming that at minimum, there was "an obligation to negotiate the open issues in good faith in an attempt to reach the ultimate contractual objective . . . ." (Opposition at 3.)  Yet, this argument is contradicted by the Complaint; the Complaint characterizes the alleged contract as if there were no "open issues."  (<u>E.g.</u>, Complaint ¶¶ 1, 19 (alleging "binding contractual commitment to purchase certain bankruptcy claims . . . . The terms of the contractual agreement were memorialized in IB messages")).  And even if the Complaint alleged there were "open issues," it did not allege that Invictus breached an obligation to negotiate them.

These inconvenient facts force Plaintiff to downplay the relevance of cases such as <u>DCR Mtge. VI Sub I, LLC v. Peoples United Fin., Inc.</u>, 148 A.D.3d 986 (2d Dep't 2017) and <u>E. Consol. Props., Inc. v. Morrie Golick Living Trust,</u> 83 A.D.3d 534, 534 (1st Dep't 2011), claiming that their reasoning is inapplicable to the Motion because those rulings came only after discovery.  Here

however, discovery is not needed for this Court to determine that the alleged agreement as to a single $5 million claim was "subject to" sufficient documentation, diligence, and KYC, just as in DCR, not to mention identification by Plaintiff of the specific claim to be sold, as opposed to the multiple claims now alleged.  This Court need look no further than Plaintiff's failure to even address, much less rebut Kaczmarcysk v. Dutton, to find adequate grounds for dismissal.  414 F. App'x 354, 356 (2d Cir. 2011) ("When a party gives forthright, reasonable signals that it means to be bound only by a written agreement, courts should not frustrate that intent." (citation omitted)).

Plaintiff's dismissal of the term "subject to" is belied by its own analysis of the Second Circuit's four-factor test in Winston v. Mediafare Ent. Corp., 777 F.2d 78, 80 (2d Cir. 1986), which determines whether a binding contract has been formed in the absence of a signed document.  That test inquires "(1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing."

Plaintiff's attack on the Motion's Winston analysis falls woefully short.  Specifically, Plaintiff claims that the first and third factors preclude dismissal because the "subject to" language was not a sufficiently express reservation of rights.  (Opposition at 18.)  However, as set forth above, given the extreme brevity of the supposed agreement and Plaintiff's own repeated inclusion of three specific "subject to" terms, the first and third factors are met.  As noted, there was an express reservation of the right not to be bound and all of the terms were not agreed on, namely the transfer documentation and the actual claim to be transferred (as well as diligence and KYC).

Plaintiff's discussion of the second factor asserts partial performance based on actions that are not even set forth in the alleged contract as required for contract formation or completion.  It

is wholly irrelevant that Plaintiff continued to hold $4 million in LATAM claims, procured an additional $1 million in claims, and engaged counsel, in the face of having failed to perform those items that were actually and specifically included in its *own* writings—diligence, KYC and transfer documentation.  To the extent that Plaintiff suggests these were terms, such a suggestion is merely an attempt to introduce parol evidence to modify the written terms of the alleged contract.

As to the fourth <u>Winston</u> factor, again Plaintiff's words undermine its position by stating, "purchase and sale of bankruptcy claims requires certain documentation, including assignment of claims agreements."  Opposition at 6 (citing Complaint ¶ 3).  Thus, Plaintiff concedes that bankruptcy claims trades are the type of contracts that are usually committed to writing.

In sum, the four factors applied to this Complaint demonstrate that, as a matter of law, there is no enforceable contract between Plaintiff and Invictus.  *First*, the alleged agreement was "subject to" the satisfaction of three separate and independent conditions: due diligence; mutually agreeable documentation; and know your customer.  *Second*, the language in the Proposed Trade Recap makes clear—and Paragraph 40 of the Complaint concedes—that there were still significant material terms of the discussed sale to which the parties had not yet agreed.  <u>See</u> Patel Dec., Ex. 3. *Third*, the other two <u>Winston</u> factors—whether there was any partial performance and whether the agreement at issue is the type of contract that is usually committed to writing—make clear that there is no enforceable contract.  Indeed, not only was there no partial performance on the transaction—Plaintiff made *no* mention of the sale and took no action for months, never tendered the claim, never sent diligence, and never successfully completed (or even started) KYC.

## C.  The Breach of Contract Claim Fails Because Plaintiff Cannot Allege It Tendered a $5 Million LATAM Bankruptcy Claim to Invictus.

As set forth in the Motion, the Complaint is devoid of any allegation that Plaintiff ever tendered a claim or claims to Invictus.  Motion at 2, 3, 9, 12, 17; <u>see also</u> Complaint ¶¶ 20, 30.

### D. Plaintiff's Argument That It "Was and Remains Willing to Perform" Does Not Save the Complaint from Dismissal.

Plaintiff's argument that it "Was and Remains Willing to Perform" in the face of its failure to plead that the diligence and KYC requirements were met does not save the Complaint from dismissal.  In fact, this argument is actually an admission that there were conditions precedent that were not fulfilled.

As a fallback, Plaintiff claims that "[a]t the very least, the Complaint and documents referenced therein plausibly allege the existence of a so-called 'Type II' preliminary agreement, which obligated [Invictus] to negotiate the settlement in good faith . . . ." (Opposition at 21.)  This Type II argument cannot overcome the materiality of Plaintiff's failure to make any allegations whatsoever as to the commencement, much less completion, of two of the three material "subject to" terms (diligence and KYC).  Nor does the argument overcome Plaintiff's admission at Paragraph 40 of the Complaint that the *sine qua non* of Invictus's alleged breach was its supposed failure to "negotiate transfer documentation," meaning that there was no contract because a material term remained to be negotiated.  (See Opposition at 21) (citing Teachers Ins. & Annuity Ass'n of Am. V. Tribune Co., 670 F.Supp. 491, 498 (S.D.N.Y. 1987).)

### POINT II:

### PLAINTIFF'S PROMISSORY ESTOPPEL CLAIM FAILS

The promissory estoppel claim fails as a matter of law because it incorporates allegations that that there was an express "contractual agreement" between the parties.  However, the relevant communications between Invictus and the Defendant, through their agents, were via text and email.  Nowhere in those exchanges does the purportedly "unambiguous promise" alleged in the Complaint appear.  (See Complaint ¶ 43.)  That so-called "promise" is merely a legal conclusion

based on what Plaintiff believes a Type II agreement would entail.

Moreover, this allegation of a "promise" proves why the Plaintiff's promissory estoppel claim fails as a matter of law: it incorporates allegations of an express "contractual agreement." Even if the parties did not expressly acknowledge or agree on every term of an agreement, the mere allegation of its existence is enough to preclude a promissory estoppel claim.

The dismissal of a cause of action for promissory estoppel due to the existence of a contract, does not, as Plaintiff claims, turn on the defendant's acknowledgment the validity of its validity or denial of a breach of the same; Plaintiff's discounting of cases cited in support of the Motion, such as ID Beauty S.A.S. v. Coty Inc. HQs., 164 A.D.3d 1186 (1st Dep't 2018) is of no moment. There, the Appellate Division resoundingly held that a "promissory estoppel claim is barred by the *alleged* existence of a contract." (emphasis supplied). Thus, the parties' mutual recognition of a contract is immaterial to the promissory estoppel claim's dismissal. All that is necessary for such a claim to be dismissed is an assertion of a contract, which Plaintiff has made. (Motion at 21.)

Plaintiff's promissory estoppel claim is also flawed because the damages it alleges are typical of those resulting from a breach of contract, which would not constitute an unconscionable injury. If one intends to sell $4 million in currently held claims and another $1 million in future claims, then holding onto the $4 million and spending an additional $1 million are foreseeable damages if the deal falls through. Moreover, if this case continues beyond this Motion (which it should not), Plaintiff's lengthy claims settlement process and failure to take mitigating action may potentially be used as defenses against any claimed quantum of damages.

Moreover, Plaintiff's reliance on Pearce v. Manhattan Ensemble Theater, Inc., 528 F.Supp.2d 175, 181 (S.D.N.Y. 2007) to argue in absolute terms that unconscionable injury is only a prerequisite to a promissory estoppel claim when it is invoked as a defense to the Statute of

Frauds (Opposition at 24), is misguided.  To the contrary, courts have repeatedly dismissed promissory estoppel claims for failing to meet the demanding unconscionable injury standard.  <u>See Doe v. New York University</u>, No. 1:20-CV-01343-GHW, 2021 WL 1226384, at *23 (S.D.N.Y. Mar. 31, 2021) (dismissing promissory estoppel claim prior to discovery for failure to meet "demanding" unconscionable injury standard, in the absence of an implication of the Statute of Frauds); <u>Webb v. Greater New York Automobile Dealers Assoc., Inc.</u>, 144 A.D.3d 1136 (2d Dep't 2016) (affirming dismissal of promissory estoppel claim for failing to allege "unconscionable injury" with the Statute of Frauds not being at issue); <u>Halliwell v. Gordon</u>, 61 A.D.3d 932, 934 (2d Dep't 2009) ("[r]ecovery under the doctrine of promissory estoppel is limited to cases where the promisee suffered unconscionable injury." (citations omitted)).

## POINT III:

### PLAINTIFF IS NOT ENTITLED TO ATTORNEYS' FEES

Even if the Complaint is not dismissed in whole or in part, Plaintiff now apparently concedes at footnote 7 of the Opposition that its demand for attorneys' fees in connection with this action may not be sustained.

## CONCLUSION

In sum, there was no enforceable agreement—no meeting of the minds.  Even if there had been, Plaintiff did not satisfy the conditions precedent.  Therefore, for the reasons set forth herein, and in the Motion, the Complaint should be dismissed with prejudice.

Dated:  New York, New York
        March 15, 2023

Respectfully submitted:



1200 Four Seasons Tower
1441 Brickell Avenue
Miami Florida 33131
Phone: (305) 350-5116
Fax: (305) 372-2738

By:   */s/ Adam L. Schwartz*
      Adam L. Schwartz
      Email: aschwartz@homerbonner.com

      and

      **OTTERBOURG P.C.**

By:   */s/ Erik B. Weinick*
      Erik B. Weinick
      230 Park Avenue
      New York, NY 10169
      (212) 661-9100
      Email: eweinick@otterbourg.com

*Attorneys for Defendant Invictus Global
Management, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on March 15, 2023, the foregoing was filed with the Clerk of this Court via CM/ECF and that true and correct copies of same were served upon the following counsel for Plaintiff via e-mail:

>David Litterine-Kaufman, Esq.
>dlitterinekaufman@orrick.com
>Harry F. Murphy, Esq.
>hmurphy@orrick.com
>Orrick, Herrington & Sutcliffe LLP
>51 West 52nd Street
>New York, NY 10019-6142

*/s/ Erik B. Weinick*
Erik B. Weinick
*Attorney for Defendant*